RECEIVED

USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK

DATE ___8_/_4_/_14___

UNITED STATES DISTRICT COURT                                    b

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| DONALD W. HARGER,<br>        Plaintiff | CIVIL ACTION<br>NO. 3:14-CV-00976 |
| VERSUS | |
| CITY OF WEST MONROE, et al.,<br>        Defendants | MAGISTRATE JUDGE JAMES D. KIRK |

MEMORANDUM OPINION

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983 and Louisiana state law by plaintiff Donald W. Harger ("Harger") on May 13, 2014 (Doc. 1).  The named defendants are the City of West Monroe, and Officers Justin Hattaway and Jody Ledoux (officers employed by the City of West Monroe Police Department) in both their official and individual capacities. Harger contends that on May 16, 2013, Officers Hattaway and Ledoux falsely arrested and falsely imprisoned Harger and used excessive force against Harger, resulting in injuries.  Harger alleges Section 1983 and state law claims for false arrest, false imprisonment, excessive force, assault, battery, intentional infliction of emotional distress, and negligence.  For relief, Harger asks for compensatory and punitive damages, attorney fees, and costs.

Defendants filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. rule 12(b)(6) (Doc. 3), and Harger filed a brief in opposition (Doc. 7).  The parties have agreed to try this case

before the undersigned Magistrate Judge, and the District Judge has consented (Doc. 11).  Defendants' motion to dismiss is now before the court for disposition.

<u>Law and Analysis</u>

<u>Motion to Dismiss</u>

A motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.  <u>Crowe v. Henry</u>, 43 F.3d 198, 203 (5th Cir. 1995).  In particular, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Hirras v. National Railroad Passenger Corp.</u>, 10 F.3d 1142, 1144 (5th Cir. 1994), vacated on other grounds, 512 U.S. 1231, 114 S.Ct. 2732 (1994); <u>Doe</u>, 753 F.2d at 1102.  For the purposes of a motion to dismiss for failure to state a claim upon which relief can be granted, the factual allegations of the complaint must be taken as true, and any ambiguities must be resolved in favor of the pleader.  <u>Doe v. U.S. Dept. of Justice</u>, 753 F.2d 1092, 1101 (D.C.Cir. 1985).  It is presumed that general allegations embrace the specific facts that are necessary to support the claim.  <u>National Organization for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 114 S.Ct. 798, 803 (1994), citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 112 S.Ct. 2130, 2137 (1992).

2

City of West Monroe

Defendants contend Harger's action against the City of West Monroe should be dismissed because he has failed to identify a custom or policy of the City of West Monroe which was the moving force behind the alleged Section 1983 violation.

In Monell v. New York City Dept. of Social Services, 436 U.S. 658, 689, 98 S.Ct. 2018, 2035 (1978), the Supreme Court held that municipalities and other local governmental bodies are "persons" within the meaning of Section 1983, and that, since there is no respondeat superior liability under Section 1983, a municipality may not be held liable under Section 1983 solely because it employs a tortfeasor.  Municipal liability under §1983 attaches where, and only where, a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.  Pembaur v. City of Cincinnati, 475 U.S. 469, 484, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

The Supreme Court has held that a plaintiff seeking to impose liability on a municipality under Section 1983 is required to identify a municipal "policy" or "custom" that caused the plaintiff's injury.  Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the

3

municipality.  Board of Cty. Comm'rs of Bryan Cty. v. Brown, 520
U.S. 397, 403-404, 117 S.Ct. 1382, 1388 (1997).

Harger concedes that he cannot identify a custom or policy by
the City of West Monroe on which to base a Section 1983 claim, but
contends the City of West Monroe is liable as Hattaway's and
Ledoux's employer pursuant to state law.

Louisiana state law imposes vicarious liability on a
municipality for the excessive use of force by an employee-police
officer in effecting an arrest.  Lewis v. Goodie, 798 F.Supp. 382,
391 (W.D.La. 1992), citing Braud v. Painter, 730 F.Supp. 1, 9
(M.D.La. 1990); La.C.C. art. 2320; Lamkin v. Brooks, 498 So.2d 1068
(La. 1986); Cheatham v. City of New Orleans, 378 So. 2d 369, 375
n.7 (La. 1979).

Therefore, the defendants' motion to dismiss should be granted
in part as to Harger's Section 1983 claims against the City of West
Monroe.  However, defendants' motion to dismiss should be denied in
part as to Harger's state law claims against the City of West
Monroe.

Official Capacity Claims Against Officers Hattaway and Ledoux

Defendants contend that Harger's complaint against Officers
Hattaway and Ledoux in their official capacities should be
dismissed because it is duplicative of Harger's suit against the
City of West Monroe.

A suit brought against a defendant in his official capacity

4

is, effectively, a suit against the governmental unit that employs the defendant. Monell v. Dept. of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55 (1978); Brooks v. George Cty., Ms., 84 F.3d 157, 165 (5th Cir.), cert. den., 519 U.S. 948, 117 S.Ct. 359 (1996). It is appropriate to dismiss allegations against officers in the official capacities where those allegations duplicate claims against the respective governmental entity. Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001). Also, Hicks v. Tarrant Cty. Sheriff's Dept., 352 Fed.Appx. 876, 877 (5th Cir. 2009).

Therefore, defendants' motion to dismiss should be granted as to the official capacity claims against Officers Hattaway and Ledoux, and Harger's claims against them in their official capacities should be dismissed.

Individual Capacity Claims Against Officer Hattaway and Ledoux

Defendants argue that Harger's Section 1983 and state law claims against Officers Hattaway and Ledoux in their individual capacities should be dismissed because Harger failed to alleged specifically how Hattaway and Ledoux were involved in the incident with Harger on May 16, 2013. Defendants contend the heightened pleading requirement is applicable since defendants are claiming qualified immunity.

In a motion to dismiss, the court presumes the general allegations embrace the specific facts necessary to support the

5

claims and also presumes the allegations in the complaint are true for purposes of the motion.  <u>National Organization for Women, Inc.</u>, 510 U.S. 249, 114 S.Ct. at 803.

In response to defendants' claims, Harger states in his brief that the officer who shoved Harger into the battery rack was Officer Ledoux and the supervising officer at the time of his arrest was Officer Hattaway (Doc. 7, p. 3/6).  Harger further alleges that Officer Hattaway failed to restrain Officer Ledoux or properly direct him as to his behavior (Doc. 7).  Therefore, on just the basis of the motion to dismiss, Harger has alleged sufficient facts which, taken as true, show Officers Hattaway and Ledoux violated his constitutional and state law rights.

However, defendants also allege they are entitled to qualified immunity as to Harger's claims under Section 1983.

To defeat a motion to dismiss on grounds of qualified immunity, a plaintiff must allege facts that fairly engage the allegations of the defense.  <u>Schultea v. Wood</u>, 47 F.3d 1427, 1433 (5th Cir. 1995).  "Heightened pleading" is needed in qualified immunity cases.  Heightened pleading requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury.  <u>Reyes v. Sazan</u>, 168 F.3d 158, 161 (5th Cir. 1999), citing <u>Schultea</u>, 47 F.3d at 1430.  To defeat a motion to dismiss on grounds of qualified immunity, a plaintiff must allege facts that fairly engage the allegations of the defense.

6

Schultea, 47 F.3d at 1433.

When a defendant raises the defense of qualified immunity, there are an array of procedures for the district court to follow. First, the district court must insist that a plaintiff suing a public official under Section 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone.  Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity.  The district court need not allow any discovery unless it finds that plaintiff has supported his claim with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.  Even if limited discovery is allowed, at its end, the court can again determine whether the case can proceed and consider any motions for summary judgment under Rule 56. Schultea, 47 F.3d at 1433-1434.

In the case at bar, Harger has specified additional facts in his brief that show how Officer Hattaway and Officer Ledoux each allegedly violated Harger's constitutional and state law rights against false arrest, false imprisonment,[1] use of excessive force,[2]

_____

[1] The constitutional torts of false arrest, unreasonable seizure, and false imprisonment require a showing that there was no probable cause.  Brown v. Lyford, 243 F.3d 185, 189 (5th Cir. 2001), cert. den., 122 S.Ct. 46 (U.S. 2001).  An officer has probable cause to arrest if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime.

See <u>Gladden v. Roach</u>, 864 F.2d 1196, 1199 (5th Cir.), cert. den., 491 U.S. 907, 109 S.Ct. 3192 (1989).  Also, <u>Hunter v. Bryant</u>, 502 U.S. 224, 228, 112 S.Ct. 534 (1991).  If probable cause for an arrest even arguably existed, immunity cannot be lost.  <u>Brown</u>, 243 F.3d at 190.

Louisiana state law recognizes the tort of false arrest. <u>Alvarado v. Poche</u>, 2002-2 (La. App. 3d Cir. 6/5/02), 819 So.2d 1150, 1152.  In order for a plaintiff to recover for false arrest, he must prove that he was unlawfully detained by the police against his will.  Thus, two elements are required to prove a case in false arrest and imprisonment: (1) detention of a person, and (2) unlawfulness of the detention.  <u>Dumas v. City of New Orleans</u>, 2001-0448 (La.App. 4 Cir. 12/05/01), 803 So.2d 1001, 1003, writ den., 2002-0024 (La. 3/15/02) 811 So.2d 912, citing <u>Harrison v. State Through Dept. of Public Safety and Corrections</u>, 97-1086 (La. 12/1/98), 721 So.2d 458, 461.

[2] The use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. <u>Saucier v. Katz</u>, 533 U.S. 194, 201-202, 121 S.Ct. 2151, 2156 (2001)(overruled on other grounds in <u>Pearson v. Callahan</u>, 555 U.S. 223, 236, 129 S.Ct. 808 (2009); <u>Graham v. Connor</u>, 490 U.S. 386, 109 S.Ct. 1865 (1989).  In a Section 1983 claim, in gauging the objective reasonableness of the force used by a law enforcement officer, the court must balance the amount of force used against the need for that force.  <u>Ikerd v. Blair</u>, 101 F.3d 430, 433-34 (5th Cir. 1996).  The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed.  <u>Ikerd</u>, 101 F.3d at 434.

In <u>Graham</u>, the Supreme Court set forth a list of factors relevant to the merits of a constitutional excessive force claim, requiring careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  If an officer reasonably, but mistakenly, believes that a suspect is likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.  <u>Saucier</u>, 533 U.S. at 204-205, 121 S.Ct. at 2158.

Also, a plaintiff asserting an excessive force claim pursuant to Section 1983 is required to show he suffered at least some form of injury.  The injury must be more than a de minimis injury and must be evaluated in the context in which the force was deployed.  <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 314 (5th Cir. 2001); <u>Williams v. Bramer</u>, 180 F.3d 699, 703-704 (5th Cir.),

assault, battery,[3] intentional infliction of emotional distress,[4]

_____

clarified on rehearing, 186 F.3d 633 (5th Cir. 1999)

Under Louisiana law, the use of force when necessary to make an arrest is a legitimate police function, but unreasonable or excessive force is a breach of an officer's duty. Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977).  Even in a situation where the arrest is lawful, a police officer may only use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.  Whether or not a police officer has used unreasonable or excessive force is determined according to the facts and circumstances of the case and various factors including the risks and dangers faced by officers, the nature of the offense involved, the existence of alternative methods of arrest and the physical size and strength of the officers as compared to that of the arrestee. McDaniel v. Green, 99-1087 (La.App. 3 Cir. 12/22/99), 755 So.2d 942, 948-949, writ den., 2000-0200 (La. 3/24/00), 758 So.2d 151, citing Stroik v. Ponseti, 96-2897 (La. 9/9/97), 699 So.2d 1072.

As to the liability of an officer who stands by while another officer uses excessive force, the Fifth Circuit has held that law enforcement officers are obligated to prevent fellow officers from violating a citizen's constitutional rights. Ware v. Reed, 709 F.2d 345, 353 (5th Cir. 1983).  See also, Lewis v. Goodie, 798 F.Supp. 382, 389 (W.D. La. 1992); Thomas v. Frederick, 766 F.Supp. 540, 555 (W.D.La. 1991).  Police officers have an affirmative duty to enforce the law, and are obliged to prevent fellow officers from violating a citizen's constitutional rights. Where an officer fails to do so, the observing officer is jointly liable to the victim under Section 1983. Lewis, 798 F.Supp. at 390.

Under Louisiana law, a police officer owes a duty to a prisoner to protect him from harm and to preserve his safety. The police officer must do what is reasonable under the circumstances. Brown v. Lee, 94-104 (La.App. 5th Cir. 7/13/94), 639 So.2d 897, 897-899, writ den., 94-2127 (La. 11/18/94), 646 So.2d 378, and cases cited therein.  Also, Hardy v. Bowie, 98-2821 (La. 9/8/99), 744 So.2d 606, 614, and cases cited therein.

[3] Under Louisiana law, a battery is the intentional use of force or violence upon another person or the intentional placing of another in reasonable apprehension of receiving a battery. La.R.S. 14:33.  An essential element of battery is physical contact, whether injurious or merely offensive, and may be committed by touching another through the clothing. State v.

and negligence.[5]

---

Schenck, 513 So.2d 1159 (La. 1987).  An assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery.  La.R.S. 14:36. The elements of assault are an intent to scare mental element, conduct by defendant of the sort to arouse reasonable apprehension of bodily harm, and the resulting apprehension on the part of the victim.  State v. Blaise, 504 So.2d 1092 (La.App. 5th Cir. 1987).  An assault occurs where one person threatens another and the threatening person has the present ability to carry out those threats so that the person threatened is placed in reasonable apprehension of receiving an injury.  Johnson v. English, 34,322 (La. 5th Cir. 12/20/2000), 779 So.2d 876, 880. When examining claims for assault and battery, officers' conduct in effecting an arrest must be measured by standard negligent tort theories pursuant to La.C.C. art. 2315.  LaBauve v. State, 618 So.2d 1187 (La. App. 3d Cir.), writ den., 624 SO.2d 1235 (La. 1993).  A court must evaluate the officers' actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officers.  Cloy v. Lee, 01-920 (La. App. 5th Cir. 1/15/02), 807 So.2d 900.

[4] To prove a claim of intentional infliction of emotional distress under Louisiana law, a plaintiff must prove (1) that the conduct of the defendant was extreme and outrageous, (2) that the emotional distress suffered by the plaintiff was severe, and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.  Sparks v. Donovan, 2004-388 (La. App. 3d Cir. 10/14/04), 884 So.2d 1276, and cases cited therein.  The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests.  The distress suffered must be such that no reasonable person could be expected to endure it.  Liability arises only where the mental suffering or anguish is extreme.  Finally, liability can arise only where the actor desires to inflict severe emotional distress or where he knows that such duress is certain or substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209-1210 (La. 1991).

Moreover, defendants have not actually argued their motion for qualified immunity, but appear to believe they need only state they are claiming the defense of "qualified immunity" in order to invoke the heightened pleading requirement.

The defense of qualified immunity protects a public official from both litigation and liability, absent a showing that the official violated a constitutional right that was clearly established at the time of the incident. Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. den., 516 U.S. 1084, 116 S.Ct. 800 (1996). Qualified immunity cloaks a police officer from personal liability for discretionary acts which do not violate well established law. Officers have qualified immunity if their actions could reasonably have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994), and cases cited therein. Qualified immunity operates to ensure that, before they are subjected to

---

[5] To prevail on a negligence claim under La. Civil Code arts. 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). Brown v. Lee, 94-104 (La.App. 5 Cir. 7/13/94), 639 So.2d 897, 898-899, writ den., 94-2127 (La. 11/18/94), 646 So.2d 378, citing Roberts v. Benoit, 605 So.2d 1032 (La. 1992); Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989).

11

suit, officers are on notice their conduct is unlawful.  Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2515 (2002).

The qualified immunity analysis involves a two-step process. First, the court must examine whether the plaintiff has alleged a violation of a clearly established constitutional right.  If the court determines the plaintiff has alleged a violation of a clearly established constitutional right, the next step is to determine whether the official's conduct was objectively reasonable at the time of the incident.  Thus, if the pleadings on their face show an unreasonable violation of a clearly establish constitutional right, the defense of qualified immunity will not sustain a motion to dismiss under Rule 12(b)(6).  Shipp v. McMahon, 234 F.3d 907, 911-912 (5th Cir.), cert. den., 532 U.S. 1052, 121 S.Ct. 2193 (2001). In other words, the threshold question is whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right.  Keenan v. Tejada, 290 F.3d 252, 261 (5th Cir. 2002), citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001).

Defendants have not argued that Harger's constitutional rights under the Fourteenth Amendment against false arrest, false imprisonment, and excessive force were not clearly established in 2013.  Defendants also have not argued that Harger has not alleged facts sufficient to support claims under Section 1983 for false arrest, false imprisonment, and excessive force.  Therefore, the

12

elements of Harger's claims will not be analyzed herein.  Instead, defendants only contend that Harger has not specifically alleged what each officer did to violate Harger's constitutional rights.

Harger alleges that, on May 16, 2013, he and his wife were at their place of business, Interstate Batteries of Monroe in West Monroe, Louisiana.  Harger alleges that his wife received a call from All Tune and Lube in West Monroe, stating they had a warranty claim at their shop for one of Harger's car batteries, but admitting their client has left the lights on overnight in her vehicle.  Harger contends that, although his wife explained that was not a warranty replacement and that All Tune and Lube just needed to recharge the battery, the shop appeared reluctant to do so (Doc. 1).  Harger went to All Tune and Lube with a hydrometer to check the battery, spoke to the manager, listened to strong profanity directed at him by one of the employees, and decided to collect all of the batteries he had on consignment at All Tune and Lube-seven new batteries and one used battery (Docs. 1, 7).  After Harger returned to his business with his batteries, "Keith," the manager at All Tune and Lube, called and said he thought Harger had taken one of their used batteries; Harger explained that he received the old battery that was left when one of his new batteries was used per their contract (Docs. 1, 7).

Harger was on the phone with the All Tune and Lube manager, "Keith," when the police arrived at Harger's business to retrieve

13

the battery Harger had "stolen;" when Harger tried to explain what had occurred, the officers began a Miranda warning (Doc. 1). Harger then stated he would just return the used battery to All Tune and Lube and resolve the dispute in civil court.  Harger got the used battery, but objected to the officers' order for him to return the battery to All Tune himself, since the employees there had been so hostile (Docs. 1, 7).  The officers told Harger that he would return the used battery or be arrested, at which point Harger asked what he would be arrested for (Docs. 1, 7).

Officer Ledoux then told Harger to turn around, shoved him into a battery rack, and pulled out his taser (Docs. 1, 7).  When Harger's wife offered to take the battery back to All Tune and Lube, Officer Ledoux told her to shut up or she would be arrested (Doc. 1).  Harger contends Officer Ledoux then ordered Harger to get on his knees, and Ledoux again pushed him into a battery rack (Docs. 1, 7).  Harger was then arrested him for theft, interfering with a police officer, and simple assault (Doc. 1).  Harger contends he had to bond himself out of jail, and that he received physical injuries which required medical treatment as a result of the battery committed by Officers Ledoux and Justin Hattaway (Docs. 1, 7).

Harger contends that Officer Hattaway was the supervising officer and Officer Ledoux was the officer who shoved him into the battery rack (Doc. 7).  Harger contends that Officer Hattaway did

not take any action to restrain or properly direct Officer Ledoux, and participated in the transport and booking process for Harger. Harger contends that Officer Ledoux has a prior history with another "department" for physical misconduct and that the City was aware of, or should have been aware of, that fact (Doc. 7). Harger also alleges that all charges against him were dropped by the City of West Monroe (Doc. 1).

Since Harger's brief adequately specifies how each officer participated in the violation of his constitutional rights, plaintiff has refuted defendants' argument that his complaint is too vague. Defendants have not shown they are entitled to qualified immunity as to Harger's Section 1983 claims, and their motion to dismiss on the basis of qualified immunity should be denied.

**Accordingly,**

IT IS ORDERED that defendants' motion to dismiss is GRANTED IN PART as to Harger's Section 1983 claims against the City of West Monroe. Harger's Section 1983 claims against the City of West Monroe are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that defendants' motion to dismiss IS DENIED IN PART as to Harger's state law claims against the City of West Monroe.

IT IS FURTHER ORDERED that defendants' motion to dismiss is GRANTED IN PART as to Harger's official capacity claims against

15

Officer Hattaway and Officer Ledoux.  Harger's official capacity claims against officer Hattaway and Officer Ledoux are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that defendants' motion to dismiss is DENIED IN PART as to Harger's individual capacity claims, pursuant to both Section 1983 and state law, against Officer Hattaway and Officer Ledoux.

THUS DONE AND SIGNED at Alexandria, Louisiana, on this _____ day of August 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

16